Jeff P. Prostok
State Bar No. 16352500
Julie C. John
State Bar No. 24001834
FORSHEY & PROSTOK, L.L.P.
777 Main Street, Suite 1290
Fort Worth, Texas 76102
(817) 877-8855 (817) 877-4151 FAX
jprostok@forsheyprostok.com
jjohn@forsheyprostok.com

COUNSEL FOR THE DEBTOR

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GLOBAL GROUP, INC. | § | CASE NO. 09-42719-rfn-11 |
| | § | |
| DEBTOR. | § | Chapter 11 |
| | § | |

### FIRST AMENDMENT AND SUPPLEMENT TO THE PLAN OF REORGANIZATION PROPOSED BY THE DEBTOR, GLOBAL GROUP, INC.

TO THE HONORABLE RUSSELL F. NELMS, U.S. BANKRUPTCY JUDGE:

Comes now the Debtor, Global Group, Inc., ("Debtor" or "Global Group") and files this First Amendment and Supplement ("First Amendment") to the Plan of Reorganization proposed by Global Group, Inc. ("Plan") (Docket No. 85).

1. The Debtor previously filed the Plan on August 25, 2009. Terms used in this First Amendment are to be given the same meaning as in the Plan, unless otherwise stated herein.

### Section 1 Revisions

2. A new definition shall be added to Section 1 of the Plan as follows:[1]

1.1 "Accounts Receivable" shall mean the customer accounts owing outstanding amounts to the Debtor at any given time due to services and/or product rendered by the Debtor.

---

[1] The numbering of the definitions in Section 1 shall be adjusted consistent with the addition of a new definition as Section 1.1.

3. Former Section 1.51 of the Plan is revised as follows:

1.52 "Objection Deadline" shall mean ninety (90) days following the Effective Date unless otherwise extended by order of the Bankruptcy Court.

### Section 4.2 Revision

4. Section 4.2 of the Plan is revised as follows:

4.2. **Class 2 – Bank Secured Claim**. The Bank Secured Claim shall be treated as a fully secured claim secured by a lien and security interest in the Bank Collateral, as specifically described herein, and shall be paid and treated as follows:

(a) The Reorganized Debtor shall execute and deliver to the Bank, in full satisfaction of its Claim, new notes as described below, (collectively, "New Bank Notes") dated as of the Effective Date of the Plan, payment of which will be secured by the Bank Collateral. The New Bank Notes shall be in substantially the form filed with the Bankruptcy Court as Plan Documents. The Bank shall retain its liens in the Bank Collateral, as specifically described herein, until the New Bank Notes are paid in full.

(b) The New Bank Notes shall consist of three separate notes as follows:

(i) the New Equipment Note;
(ii) the New Real Estate Note; and
(iii) the New WebPress Note.

(c) The New Bank Notes shall amend and restate the terms of the Equipment Note, the Real Estate Note and the WebPress Note. The terms of each New Bank Note are described in 4.2(d)-(f) herein.

(d) The New Equipment Note.

(i) The principal amount of the New Equipment Note shall be equal to the Allowed Claim on account of the Equipment Note plus the Allowed Claim on account of the Line of Credit Claim as of the Effective Date.

(ii) The New Equipment Note shall bear interest at the Plan Rate and shall be paid in 84 substantially equal monthly installments.

(iii) The New Equipment Note shall continue to be secured by a first lien and security interest in the Bank Collateral, subject only to liens for applicable Ad Valorem Tax Claims.

(iv) Unless commenced sooner, the first installment payment on the New Equipment Note shall be paid on the first day of the second calendar month following the Effective Month, with a like installment being due and payable on the first day of each calendar month thereafter until the New Equipment Note is paid in full.

(e)     The New Real Estate Note.

   (i)     The principal amount of the New Real Estate Note shall be equal to the Allowed Claim on account of the Real Estate Note as of the Effective Date.

   (ii)    The New Real Estate Note shall bear interest at the Plan Rate and shall be amortized over 300 months in substantially equal monthly installments.

   (iii)   The New Real Estate Note shall mature on the 15th day of the 60th month following the Effective Date of the Plan. Upon maturity of the New Real Estate Note, the Debtor shall pay the Bank the balance owed on the Real Estate Note.

   (iv)    The New Real Estate Note shall continue to be secured by a first lien and security interest in the Bank Collateral, excluding the Accounts Receivable, and subject only to liens for applicable Ad Valorem Tax Claims.

   (v)     Unless commenced sooner, the first installment payment on the New Real Estate Note shall be paid on the first day of the second calendar month following the Effective Month, with a like installment being due and payable on the first day of each calendar month thereafter for a period of 59 months.

(f)     The New WebPress Note.

   (i)     The principal amount of the New WebPress Note shall be equal to the Allowed Claim on account of the WebPress Note as of the Effective Date.

   (ii)    The New WebPress Note shall bear interest at the Plan Rate and shall be paid as set forth in Section 4.2(f)(iv) and shall be amortized over 84 months.

   (iii)   The New WebPress Note shall continue to be secured by a first lien and security interest in the Bank Collateral, excluding the Accounts Receivable, and subject only to liens for applicable Ad Valorem Tax Claims.

   (iv)    The Debtor shall have a period of one (1) year from the Effective Date to market the WebPress for sale. This one year period is the "Marketing Period". During the Marketing Period, the Debtor shall make monthly interest payments to the Bank on account of the New WebPress Note ("Interim Payments").

   (v)     The Interim Payments shall commence on the first day of the second calendar month following the Effective Month, with a like Interim Payment being due and payable on the first day of each calendar month thereafter until the expiration of the Marketing Period.

(vi)     If the WebPress has not sold by the expiration of the Marketing Period, on the first day of the calendar month following the expiration of the Marketing Period, the Debtor shall commence principal and interest payments to the Bank on account of the New WebPress Note and such payments shall continue until the New WebPress Note is paid in full.

(g)     The amounts due under the New Bank Notes shall be reduced on account of any amount recovered by the Bank under the Wolf Guaranty and/or from any Collateral securing the Wolf Guaranty.

## Section 4.8 Revision

5.     Section 4.8 of the Plan is revised as follows:

4.8     **Class 8—Unsecured (General) Claims**.  The holders of Unsecured (General) Claims shall be paid and treated as follows:

(a)     Any holder of an Allowed Class 8 Claim may elect to reduce its Claim to $500 and be treated as the holder of a Class 1 Convenience Creditor.  Holders of Allowed Unsecured (General) Claims electing treatment as a Convenience Claim shall be treated as a part of Class 1 and shall receive no distribution as part of Class 8.

(b)     Each holder of a Class 8 Allowed Claim shall receive a distribution equal to fifty-percent (50%) of such holder's Allowed Claim to be paid in quarterly payments over a 36 month period commencing on January 1, 2010, with the first payment due on April 1, 2010.  Thereafter, quarterly payments shall be made on January 1, April 1, July 1 and October 1 of each year and continue for a period of three years, with the final payment due on January 1, 2013.

(c)     To the extent that the Debtor sells all or substantially all of the Real Estate or Assets prior to the completion of the payments set forth in this section, any amounts remaining unpaid to Class 8 Creditors pursuant to the Plan shall be paid at the closing of such sale, following the payment of any outstanding Class 1-7 Claims, as applicable.

## Section 8.1 Revision

6.     Section 8.1, Procedures for Resolving and Treating Contested and Contingent Claims, is revised as follows:

8.1.     Objection Deadline.  All objections to Claims shall be served and filed by the Objection Deadline; provided, however, the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of claim.  The Reorganized Debtor may file a motion to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline.  Any proof of claim filed more than sixty (60) days after the Effective Date shall be of no force and effect and need not be objected to by the Reorganized Debtor.  Any Contested Claims may be litigated to Final Order.  The Reorganized Debtor may compromise and settle any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court.  Bankruptcy Rule 9019 shall not apply to any settlement of a Contested Claim after the Effective Date.

## Section 10.1 Revision

7.      Section 10.1, Maintenance of Causes of Action, is revised as follows:

10.1.   <u>Generally</u>.  Unless expressly waived or released by the Reorganized Debtor, the Reorganized Debtor shall retain, receive and shall be vested in any cause of action, counterclaims and rights of offset or recoupment; <u>provided, however</u>, as set forth in Section 6.5 of the Plan, the Reorganized Debtor shall not assert any Avoidance Actions against any Person.

## Section 14.8 Revision

8.      Section 14.8, Miscellaneous Provisions, is revised as follows:

14.8.   <u>Exculpations</u>.  No agent, representative, accountant, financial advisor, attorney, shareholder, officer, affiliate, member or employee of the Debtor, the Reorganized Debtor shall ever have any liability to any Person (including any Creditor) other than the Debtor or Reorganized Debtor for any act, omission, or event in connection with, or arising out of, or relating to, any of the following:  (a) the bankruptcy case, including all matters or actions in connection with or relating to the administration of the estate, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) the administration of the Plan on a post-confirmation basis.  Further, no member, agent, representative, accountant, financial advisor or attorney for the Official Committee of Unsecured Creditors shall ever have any liability to any Person for any act, omission, or event in connection with, or arising out of, or relating to, any of the following: (a) the bankruptcy case, including all matters or actions in connection with or relating to the administration of the estate, (b) the Plan, including the proposal, negotiation, confirmation or consummation of the Plan, or (c) the administration of the Plan on a post-confirmation basis.

Dated: October 5, 2009.

Respectfully submitted,

GLOBAL GROUP, INC.

BY:     GLOBAL GROUP, INC.

        <u>/s/ James Wolf</u>
        James Wolf, President

BY:   JAMES WOLF

        <u>/s/ James Wolf</u>
        James Wolf, Individually

APPROVED:

/s/ Jeff P. Prostok
Jeff P. Prostok
State Bar No. 16352500
Julie C. John
State Bar No. 24001834
Forshey & Prostok, L.L.P.
777 Main Street, Suite 1290
Fort Worth, Texas 76102
(817) 877-8855
(817) 877-4151 Fax
jprostok@forsheyprostok.com
jjohn@forsheyprostok.com

COUNSEL TO THE DEBTOR,
GLOBAL GROUP, INC.

L:\JPROSTOK\Global Group # 5139\Plan and Disclosure Statement\First supp and amendment to plan.docx